WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Bhishm Deo Neal – 019,<br>Jermaine Lamar Maxwell – 009,<br><br>    Defendants. | CR 18-01695-TUC-JAS (EJM)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is a Motion for Severance filed by counsel for Bhishm Deo Neal and joined in by counsel for Jermaine Lamar Maxwell. (Docs. 3343 & 3344.) Neal seeks a severance of his trial from defendants Maxwell and Moore on two grounds: (1) disparity of the weight of the evidence; and (2) antagonistic defenses. In his joinder, Maxwell does not seek a severance per se, but rather, presents arguments in support of Neal's motion to sever.[1] For the reasons discussed below, the Court recommends that the Motion for Severance be denied.

## **FACTUAL BACKGROUND**

On August 23, 2018, a federal grand jury sitting in Tucson, Arizona returned a seventeen-count Indictment against twelve defendants. (Doc. 3.) Defendant Neal was not charged in that indictment. Defendant Maxwell was charged with two offenses: Conspiracy to Possess with the Intent to Distribute Cocaine, in violation of 21 U.S.C. §

---

[1] The Court agrees with the government that Maxwell does not have standing to assert arguments in support of Neal's severance motion, especially in the absence of any argument that Maxwell will be prejudiced if Neal's trial is not severed.

846; and Possession with the Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). Six other defendants were charged with some or all of the following violent offenses: Violent Crime in Aid of Racketeering – Conspiracy to Commit Murder, in violation of 18 U.S.C. § 1959(a)(5) [Count 1]; Violent Crime in Aid of Racketeering – Murder, in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2 [Count 2]; Violent Crime in Aid of Racketeering – Conspiracy to Commit Assault with a Dangerous Weapon, in violation of 18 U.S.C. § 1959(a)(6) [Count 3]; and Violent Crime in Aid of Racketeering – Assault with a Dangerous Weapon, in violation of 18 U.S.C. § 1959(a)(3) [Count 4].

On October 21, 2020, a federal grand jury sitting in Tucson, Arizona returned a forty-six count Superseding Indictment against eighteen defendants, including defendant Maxwell. (Doc. 537.) The following counts were added against Mr. Maxwell: (1) a RICO conspiracy, in violation of 18 U.S.C. §§ 1962(d) and 1963(a) [Count 1]; (2) Violent Crime in Aid of Racketeering – Murder, in violation of 18 U.S.C. § 1959(a)(1) [Count 3]; (3) Use of a Firearm During and in Relation to a Crime of Violence Resulting in Death, in violation of 18 U.S.C. § 924(j), 924(c)(1)(A)(i), (ii)(iii) [Count 4]; (4) Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) [Count 22]; (5) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 2 [Count 23]; (6) Possession with the Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) [Count 45]; and (7) an additional count of Possession with the Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) [Count 46]. Once again, defendant Neal was not charged in the Superseding Indictment.

On October 20, 2021, a federal grand jury sitting in Tucson, Arizona returned a forty-six count Second Superseding Indictment against nineteen defendants. (Doc. 811.) Defendant Maxwell was not charged with any additional offenses. The Second Superseding Indictment charged defendant Neal with two offenses: Violent Crime in Aid of Racketeering – Murder, in violation of 18 U.S.C. § 1959(a)(1) [Count 3]; and Use of a Firearm During and in Relation to a Crime of Violence Resulting in Death, in violation of

18 U.S.C. §§ 924(j), 924(c)(1)(A)(i), (ii)(iii) [Count 4].[2]

On July 19, 2024, counsel for defendant Neal filed a Motion for Severance of his trial from defendants Maxwell and Moore. (Doc. 3343.) Counsel first argues that a severance is necessary based on the disparity in the weight of the evidence against Neal as compared to Maxwell and Moore. Counsel points out that, unlike Maxwell and Moore, Neal is not accused of being a member or associate of the Western Hills Bloods ("WHB") and is not charged in the RICO conspiracy (Count 1). As a result, "[c]ounsel anticipates days of testimony concerning the workings of the Western Hills Bloods, none of which has any relevance to the charges against Neal." (*Id*. at 1–2.) That testimony will include how WHB members and associates: enhance their position within the enterprise; enrich each other by distributing drugs; locate other WHB members to commit crimes; work with other members and associates to hide criminal activity, intimidate witnesses, and hinder prosecution; and assist other members to further the prestige and success of the WHB.

Counsel argues that the "anticipated magnitude and duration of the evidence against the defendants accused of being members of the Western Hills Bloods and taking part in the racketeering conspiracy would spillover onto Neal and prejudice him." (*Id*. at 2.) Counsel asserts that it will be impossible for the jury "to compartmentalize the huge volume of evidence that has nothing to do with Neal." (*Id*.) Simply stated, counsel argues that a trial involving Maxwell and Moore will be "about a gang, and the lengths that gang would go to protect its territory and increase the respect and fear it instilled in others." (*Id*.) Counsel reasons that because Neal is not accused of being in that gang, his trial must be severed from those (Maxwell and Moore) accused to be members of the WHB. (*Id.*)

The government argues that a severance of Neal's trial is not warranted because almost all the evidence against Maxwell and Moore that is relevant to the RICO conspiracy charge would be admissible if Neal was tried alone. (Doc. 3346 at 5.) The government points out that the elements of Count Three, Murder in Aid of Racketeering, require the

---

[2] A Third Superseding Indictment, which did not add defendants or charges, was returned on April 6, 2022. (Doc. 1425.)

government to prove: (1) an enterprise affecting interstate commerce existed; (2) the enterprise engaged in racketeering activity; (3) the defendant committed the murder under Arizona law; and (4) the defendant's purpose in committing murder was to gain entrance or maintain or increase their position in the enterprise. (*Id*.)  As a result, Count Three "independently requires the government to prove the WHB enterprise actually existed, and that the WHB enterprise was engaged in racketeering activity." (*Id*.)  Although the government concedes that Neal is not accused of being a WHB member or associate, it points out that the evidence at trial will show that: he was aware of and involved with the racketeering activities of the WHB; he assisted the enterprise through narcotic sales and acquiring firearms; and he participated in the planning and murder of F.D.  (*Id.* at 6.) Therefore, Neal's "exclusion from Count One is of no consequence because all RICO conspiracy evidence is admissible as proof of the Racketeering element in Count Three." (*Id*.)

Counsel for Neal also argues that a severance is necessary based on antagonistic defenses.  Specifically, counsel represents that Maxwell's counsel has advised that "he intends to present as a defense to the murder charge against Maxwell that the government has much more evidence against Neal than against Maxwell." (Doc. 3343 at 2.)  As a result, Maxwell's counsel will essentially become an additional prosecutor. (*Id*.)[3]

The government contends that an argument by Maxwell that there is more evidence against Neal "is not a 'mutually exclusive' defense mandating severance." (Doc. 3346 at 6–7.)  Rather, that argument is a challenge to the sufficiency of the evidence, not an antagonistic defense.  (*Id*. at 7.)  Finally, even if the argument could be viewed as an antagonistic defense, "any potential prejudice could be cured through appropriate jury instructions." (*Id*.)

. . .

. . .

---

[3] Maxwell's counsel confirms that he will point to the strength of the evidence against Neal and the "paucity of evidence implicating Mr. Maxwell." (Doc. 3344 at 2.)

# DISCUSSION

*Legal Standard*

Under Federal Rule of Criminal Procedure 8(b), multiple defendants may be joined in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts of transactions, constituting an offense or offenses. "It is well-established that in the federal system there is a preference for joint trials where defendants have been jointly indicted." *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008) (citing *Zafiro v. United States*, 506 U.S. 534, 538 (1993)). However, Fed. R. Crim. P. 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

"Rule 14 sets a high standard for showing prejudice." *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994). The Supreme Court has held that a district court should grant a severance under Rule 14 if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants. *Zafiro v. United States*, 506 U.S. 534, 540 (1993). A defendant carries the heavy burden of making a strong showing of factually specific and compelling prejudice resulting from a joint trial. *United States v. Kenny*, 645 F.2d 1323, 1345 (9th Cir. 1981). To meet that burden, "the defendant [must] show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial," *United States v. Polizzi*, 801 F.2d 1543, 1553–54 (9th Cir. 1986), and must demonstrate the jury's inability to distinguish the evidence relevant to each defendant and even if a defendant is able to show some potential jury confusion, such confusion must be balanced against society's interest in speedy and efficient trials. *United States v. Benton*, 852 F.2d 1456, 1469 (6th Cir. 1988).

In determining the prejudicial effect of a joint trial, a court must consider: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the

evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether defendants can show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *United States v. Fernandez*, 388 F.3d 1199, 1242–44 (9th Cir. 2004). Prejudice must be of such magnitude that a defendant is denied a fair trial. *United States v. Douglass*, 780 F.2d 1472, 1478 (9th Cir. 1986).

### *Spillover Evidence*

The prejudice necessary to justify a severance is not demonstrated by a "mere allegation that a defendant would have a better chance of acquittal in a separate trial" or "an argument that evidence against one defendant would have a 'spillover effect' on another defendant." *United States v. Clark,* 717 F.3d 790, 818 (10th Cir. 2013); *see Zafiro*, 506 U.S. at 540 ("[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."). In assessing whether joinder is prejudicial, of foremost importance is whether the evidence as it relates to the individual defendants is easily compartmentalized. *Vasquez-Velasco*, 15 F.3d at 846. "Where the district court uses great diligence in instructing the jury to separate the evidence, severance is unnecessary because the prejudicial effects of the evidence of codefendants are neutralized." *United States v. Stinson*, 647 F.3d 1196, 1205 (9th Cir. 2011).

The Court agrees with the government that almost all (if not all) the evidence admissible at a joint trial would be admissible if Neal were tried alone. The fact that Neal is not charged in the RICO conspiracy (Count One) or alleged to be a WHB member or associate does not limit the evidence that would be admissible for the government to prove Count Three. Count Three, Murder in Aid of Racketeering, is akin to a conspiracy offense where evidence is admissible against all co-conspirators even if a co-conspirator took no part in an overt act or a criminal offense. In fact, Count Three essentially mirrors the RICO conspiracy in that the same enterprise and purpose of the enterprise is alleged in the RICO conspiracy.

Count Three requires the government to prove that an enterprise (*i.e.*, a criminal organization comprised of individuals) existed and that the enterprise, through its members, committed crimes to further the purposes of the enterprise. Both the enterprise and its purposes are broadly alleged in paragraphs one through eleven of the Third Superseding Indictment and those allegations are incorporated into Count Three (as well as in Count One). Specifically, the enterprise consists of WHB members engaging in criminal activity, such as aggravated assault, murder, illegal possession and transfer of firearms, witness intimidation, and narcotics trafficking. Similarly, the purpose of the enterprise was to engage in the following racketeering activity: murder, drug trafficking, and obstruction of justice (primarily witness intimidation). Thus, even if Neal was tried alone, the government must still prove that an enterprise existed, the members of the enterprise, and the purposes of the enterprise. Because the enterprise and its purposes are defined broadly, evidence that is relevant to the RICO conspiracy, whose purpose is also alleged to be murder, drug trafficking, and obstruction of justice, is relevant to Count Three and admissible against Neal if tried alone. Stated another way, the evidence admissible against Neal if tried alone would not be limited to his specific role in the enterprise or the discrete acts that he allegedly committed to further its purpose. For these reasons, a severance is not warranted based on spillover evidence.[4]

*Antagonistic Defenses*

In *Zafiro v. United States*, the Supreme Court recognized that "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial in some circumstances as to mandate severance. 506 U.S. 534, 538 (1993). However, the Supreme Court declined to adopt a bright-line rule mandating severance when co-defendants have conflicting defenses. *Zafiro,* 506 U.S. at 538. The Court concluded that "mutually antagonistic defenses are not prejudicial *per se*." *Id.* The Court held that a district court should grant a severance of properly joined defendants "only if there is a serious risk that a joint trial

---

[4] Neal can certainly request that the district court instruct the jury to separate the evidence to neutralize any prejudice that may stem from evidence that specifically pertains to Maxwell.

would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. The Court then provided some examples where such a risk could occur.

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.

*Id.*

Finally, the Court noted that although a district court is more likely to determine that separate trials are necessary when there is a high risk of prejudice, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. *Id.* at 539–540. Thus, severance is not necessarily required "even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 539.

Simply stated, "[i]t is difficult to obtain severance on the basis of a mutually antagonistic defense claim." *United States v. Johnson*, 297 F.3d 845, 858 (9th Cir. 2002). In fact, the Supreme Court has noted that appellate "courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses. The low rate of reversal may reflect the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses." *Zafiro*, 506 U.S. at 538. That is true in the case at hand.

The difficulty is well demonstrated by *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996), where the Ninth Circuit held that "the desire of one defendant to exculpate himself by inculpating a codefendant. . .is insufficient to require severance" on

the basis of antagonistic defenses. In that case, two defendants were apprehended while off-loading more than 1,000 kilograms of marijuana from a sailboat. *Throckmorton*, 87 F.3d at 1071. Defendant Throckmorton moved to sever his trial from his co-defendant Calicchio arguing that their defenses were antagonistic. *Id.* Specifically, "Calicchio intended to implicate Throckmorton, admit that the drug transaction occurred, but contend he was involved solely as a DEA informant." *Id.* The district court denied the motion to sever. *Id.* At trial, Calicchio testified that he was working as a DEA informant, and detailed Throckmorton's involvement as the leader of the smuggling operation. *Id.* After both defendants were convicted of the drug offenses, Throckmorton appealed the denial of his motion to sever. *Throckmorton*, 87 F.3d at 1071.

The Ninth Circuit first noted that "[i]t is clear Calicchio's defense was antagonistic to Throckmorton's." *Id*. at 1072. But the court concluded that the desire of one defendant to exculpate himself by inculpating a codefendant was insufficient to warrant a severance. *Id.* The court held that to be entitled to severance on that ground, "a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *Id.* The court reasoned that the defendants' defenses were not, "at their core, irreconcilable." *Id.* The court pointed out that Throckmorton defended on a theory of insufficiency of the evidence, while Calicchio defended on the theory that he was a DEA informant. *Throckmorton*, 87 F.3d at 1072. The court reasoned that "[i]f the jury found that Calicchio was working for the DEA, it still could have acquitted Throckmorton for lack of evidence. Acceptance of Calicchio's defense would not have precluded Throckmorton's acquittal." *Id.* The court acknowledged that Calicchio's testimony was devasting to Throckmorton's defense. *Id.* However, the court concluded that there was nothing in the record "to suggest that Calicchio's testimony would not have been available and admissible against [Throckmorton] if the trials had been severed." *Id.*

*Throckmorton* undercuts Neal's argument that a severance is warranted based on antagonistic defenses for several reasons. First, and perhaps most importantly, Neal does

- 9 -

not specify how his defense would be antagonistic to Maxwell's defense. Second, Neal posits that Maxwell will point to the strong evidence against Neal, making Maxwell's defense essentially one of insufficiency of the evidence. Thus, like in *Throckmorton*, even if Maxwell planned to testify and implicate Neal, a severance would not necessarily be warranted. As a result, the Court cannot conclude that a severance is warranted simply because counsel for Maxwell plans to argue that there is more evidence against Neal than his client. Finally, as in *Throckmorton*, Maxwell's defense that there is more evidence against Neal than him is not "so irreconcilable" that the jury's acceptance of Maxwell's defense precludes the acquittal of Neal. The jury is free to disbelieve Maxwell's characterization of the strength of evidence against Neal as compared to him. In fact, the government's failure to include Neal in the RICO conspiracy undercuts Maxwell's argument about the alleged strong evidence against Neal.

Furthermore, the "risk factors" laid out by the Supreme Court are not present if Neal is tried with Maxwell and Moore. Although the charges are serious, the disclosure is voluminous, and the witness and exhibit lists are long, the case is not incredibly complex. The case involves violent crimes committed with guns with some drug dealing sprinkled in. Neal's trial will not involve many defendants who have markedly different degrees of culpability. Moreover, Neal has not claimed that there is essential exculpatory evidence that is only available to him if he is tried alone. Finally, as discussed above, there is no evidence that is probative of a co-defendant's guilt that is only admissible only against that co-defendant.

For these reasons, a severance is not warranted based on antagonistic defenses.

## **RECOMMENDATION**

For the reasons discussed above, the Court recommends that the District Court DENY the Motion to Sever (Doc. 3343).

Pursuant to 28 U.S.C. § 636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. No reply shall be filed

unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CR 18-01695-TUC-JAS**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 7th day of August, 2024.

_____
Eric J. Markovich
United States Magistrate Judge